102 Cal.App.3d 342 (1980)
162 Cal. Rptr. 295
THE PEOPLE, Petitioner,
v.
THE SUPERIOR COURT OF MONTEREY COUNTY, Respondent; JOHN MICHAEL SPIELMAN et al., Real Parties in Interest.
Docket No. 47432.
Court of Appeals of California, First District, Division One.
February 21, 1980.
*343 COUNSEL
George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, and Robert R. Granucci, Deputy Attorney General, for Petitioner.
No appearance for Respondent.
J. Michael Hogan for Real Parties in Interest.
OPINION
ELKINGTON, Acting P.J.
We issued an alternative writ of mandate on application of the People, who seek reversal of a superior court order *344 suppressing evidence (see Pen. Code, § 1538.5) essential to the prosecution of real parties in interest Spielman, Acosta and Tally.
(1) The single question posed is whether a police officer who, acting reasonably on probable cause to investigate a burglary, inadvertently observes, through the nearby window of an adjoining building, a person's unrelated criminal conduct therein, has unconstitutionally violated that person's reasonable expectation of privacy.
The relevant evidence on the motion to suppress was uncontroverted.
Around 2 o'clock one morning a patrolling police officer observed two men somehow enter and close behind them a gate on a fence at the rear of a closed restaurant. Thinking that they might be a cleaning crew he waited a time for lights to come on. When they did not he decided to investigate a possible "illegal entry," and called over police radio for a backup. Four backup vehicles responded and, no lights in the restaurant premises having yet come on, some of the officers surrounded the area while others proceeded to the fence and gate, which were about nine feet high. No means of opening the gate from the outside were observed, but it appeared that there was an inside latch. With the aid of others, Officer Stine climbed the fence to "get to the other side and unlock the gate"; he had no other purpose. While momentarily balancing on top of the fence, he found himself "looking into the window" of an adjacent building about six feet away. The window's venetian blinds were down, but the slats were "open" or "horizontal." Inside what appeared to be an apartment, the officer observed real party in interest Spielman engaged in what he reasonably believed to be the packaging, and thus possession, of marijuana for sale in violation of Health and Safety Code section 11359.
It may properly be emphasized that the evidence conclusively established Officer Stine's observation to have been in good faith, unplanned and inadvertent, and not in the course of an investigation of real parties in interest.
In granting the motion to suppress evidence the superior court expressly held that, "despite the fact that their [the police officers'] conduct was reasonable under the circumstances, it just seems to me that looking through a man's window at 2:00 a.m. in the morning, hanging from a ten-foot fence, is a violation of that person's reasonable expectation of privacy." (Italics added.)
*345 The court had thus held that police officers, acting reasonably, may nevertheless violate a person's reasonable expectation of privacy. In this, we conclude, the court was in error.
The sole purpose of the Fourth Amendment is to protect the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, ..."[1] (Italics added.) For "what the Constitution forbids is not all searches and seizures, but unreasonable searches and seizures."[2] (Italics added.)
"There is no exact formula for the determination of reasonableness. Each case must be decided on its own facts and circumstances ... and on the total atmosphere of the case."[3]
But there are authoritative guidelines which trial courts, and this court, are obliged to follow.[4]
It is significant that: "[T]he Fourth Amendment cannot be translated into a general constitutional `right to privacy.'"[5] "`It is well established that the right of privacy guaranteed by the Fourth Amendment is not an absolute and may be abridged where a compelling public interest so requires.'"[6] The United States Supreme Court has recognized that the "`requirements of the Fourth Amendment are not inflexible, or obtusely unyielding to the legitimate needs of law enforcement.'"[7]
*346 "[T]he standard for determining what is an illegal search is whether defendant's `reasonable expectation of privacy was violated by unreasonable governmental intrusion.'"[8] (Italics added.)
The rule iterated by People v. Triggs, supra, 8 Cal.3d 884, 891, has been expressed in many ways. A person's reasonable expectation of privacy will be violated only by "unreasonable governmental intrusion,"[9] or "arbitrary" invasions by government officials,[10] or "lawless" invasions,[11] or "unwarranted" intrusions,[12] or "unreasonable" searches and seizures,[13] or "impermissible" intrusions.[14] We find no authority holding that one's reasonable expectation of privacy might be violated by reasonable police conduct. (The italics of this paragraph are ours.)
It is a "salutary rule of law that observations of things in plain sight from a place where a police officer has a right to be do not amount to a search in the constitutional sense."[15] And more particularly, there will in such a case be no Fourth Amendment offense where the observation was unplanned and inadvertent,[16] as where "a law enforcement officer *347 lawfully engaged in a search for evidence of one crime inadvertently comes upon evidence of another crime...."[17]
"The [14th] amendment protects the citizen against invasion of privacy. Once that interest is invaded legally by an official of the State, the citizen has lost his reasonable expectation of privacy to the extent of the invasion."[18] (Italics added.)
Here the evidence conclusively established as found by the superior court that Officer Stine, while lawfully investigating an apparent burglary and at a place where he had a right to be, inadvertently observed criminal activity through the nearby window of an adjoining building. The superior court properly found that his "conduct was reasonable under the circumstances, ..." Under the authority we have cited, it follows as a matter of law that there was no unconstitutional violation of the right of privacy of the real parties in interest, or otherwise. The superior court erred in granting the motion to suppress.
The several authorities relied upon by real parties in interest concern planned and ongoing police investigations of persons suspected of criminal activity, in the course of which unlawful and unconstitutional means of surveillance of their activity were engaged in. They are wholly inapposite to the case before us.
The peremptory writ of mandate will issue.
Newsom, J., concurred.
GRODIN, J.
I concur in the result, but by a somewhat different line of reasoning. What is at issue in this proceeding (given the ruling of the trial court) is the lawfulness of the observation which the police officer made from the fence, and not the lawfulness of any subsequent intrusion *348 or seizure.[1] The top of the fence was most certainly not a "public vantage point" (cf. Pate v. Municipal Court (1970) 11 Cal. App.3d 721, 724 [89 Cal. Rptr. 893]), such as a "sidewalk, pathway, common entrance or similar passageway ... which necessarily negates any reasonable expectancy of privacy in regard to observations made there." (Lorenzana v. Superior Court (1973) 9 Cal.3d 626, 629 [108 Cal. Rptr. 585, 511 P.2d 33].)[2] The trial court was, therefore, quite correct in concluding that real parties had a reasonable expectation of privacy protectible under the Fourth Amendment as interpreted in Katz v. United States (1967) 389 U.S. 347 [19 L.Ed.2d 576, 88 S.Ct. 507].
The fact (as determined by the trial court) that the police officer was not on top of the fence for the purpose of making any observation serves to distinguish this situation from cases like People v. Triggs (1973) 8 Cal.3d 884, 887 [106 Cal. Rptr. 408, 506 P.2d 232] (disapproved on other grounds, People v. Lilienthal (1978) 22 Cal.3d 891, 896, fn. 4 (150 Cal. Rptr. 910, 587 P.2d 706)] (condemning deliberate observations into a public restroom from a "clandestine vantage point"), and Jacobs v. Superior Court (1973) 36 Cal. App.3d 489, 498 [111 Cal. Rptr. 449] (characterizing as "unreasonable" the conduct of a police officer who, investigating suspicious after-hours activity, stood on a planter box and peeked through the venetian blinds of a retail building). Still, I believe we are obliged to inquire whether the presence of the police officer at the vantage point from which he made the observation *349 was justified by one of the "established exceptions to the warrant requirement." (People v. Lorenzana, supra, 9 Cal.3d at p. 634.)[3]
It appears to be accepted that police may enter private property "for the purpose of protecting the property of the owner or occupant or some other person ... [as] where the police reasonably believe that the premises have recently been or are being burglarized [or] ... when commercial premises are found to be unlocked and unattended in the evening hours." (2 LaFave, Search and Seizure (1978) § 6.6, pp. 473-474.) In People v. Parra (1973) 30 Cal. App.3d 729 [106 Cal. Rptr. 531], the court held admissible evidence of contraband observed by police when, in response to a citizen's report that the door of a florist shop was open on a Sunday evening, they entered the shop for the purpose of securing it and obtaining information as to the owner's identity. The court noted that there was "nothing in the record to suggest" that the police entered the florist shop for any other purpose (id., at p. 732); that they were not "engaged in tracking down criminals or evidence of crime" (id., at p. 734); and that their entry was "not predicated upon abstractions or speculation but upon the observed fact of an unlocked door to a retail establishment after business hours, leading to the logical conclusion that the circumstance was a threat both to the private and public interests involved" (ibid.). The court distinguished two Supreme Court cases (People v. Smith (1972) 7 Cal.3d 282 [101 Cal. Rptr. 893, 496 P.2d 1261], and Horack v. Superior Court (1970) 3 Cal.3d 720 [91 Cal. Rptr. 569, 478 P.2d 1]), both involving intrusion upon residential premises, as cases in which "the belief upon which the officers acted *350 was not the product of facts known to or observed by them but of `a fanciful attempt to rationalize' a justification for warrantless entry." (30 Cal. App.3d at pp. 733-734, quoting from People v. Smith, supra, at p. 287.)[4]
Here, the police observed conduct reasonably leading to the belief (under the circumstances) that an illegal entry had been made to a commercial establishment and that the premises were then being burglarized. These facts justified the limited intrusion[5] upon the premises which resulted in the inadvertent observation.
NOTES
[1] United States Constitution, Fourth Amendment.
[2] Elkins v. United States (1960) 364 U.S. 206, 222 [4 L.Ed.2d 1669, 1680, 80 S.Ct. 1437]; People v. Medina (1972) 7 Cal.3d 30, 41 [101 Cal. Rptr. 521, 496 P.2d 433].
[3] People v. Ingle, (1960) 53 Cal.2d 407, 412 [2 Cal. Rptr. 14, 348 P.2d 577]; and see Go-Bart Co. v. United States (1931) 282 U.S. 344, 357 [75 L.Ed. 374, 382, 51 S.Ct. 153]; People v. Superior Court (Kiefer) (1970) 3 Cal.3d 807, 827 [91 Cal. Rptr. 729, 478 P.2d 449, 45 A.L.R.3d 559]; People v. Berutko (1969) 71 Cal.2d 84, 93 [77 Cal. Rptr. 217, 453 P.2d 721]; People v. Newell (1979) 93 Cal. App.3d 29, 36 [155 Cal. Rptr. 430].
[4] See Auto Equity Sales, Inc. v. Superior Court (1962) 57 Cal.2d 450, 455 [20 Cal. Rptr. 321, 369 P.2d 937].
[5] Katz v. United States (1967) 389 U.S. 347, 350 [19 L.Ed.2d 576, 581, 88 S.Ct. 507]; Fraser v. United States (7th Cir.1971) 452 F.2d 616, 620.
[6] People v. Thomas (1975) 45 Cal. App.3d 749, 757 [119 Cal. Rptr. 739]; Russi v. Superior Court (1973) 33 Cal. App.3d 160, 168 [108 Cal. Rptr. 716].
[7] Osborn v. United States (1966) 385 U.S. 323, 330, fn. 9 [17 L.Ed.2d 394, 400, 87 S.Ct. 429], and see authority there collected; United States v. Bobo (4th Cir.1973) 477 F.2d 974, 979.
[8] People v. Triggs (1973) 8 Cal.3d 884, 891 [106 Cal. Rptr. 408, 506 P.2d 232] (overruled on other grounds in People v. Lilienthal (1978) 22 Cal.3d 891, 896, fn. 4 [150 Cal. Rptr. 910, 587 P.2d 706]).
[9] Katz v. United States, supra, 389 U.S. 347, passim; Cleaver v. Superior Court (1979) 24 Cal.3d 297, 302 [155 Cal. Rptr. 559, 594 P.2d 984]; People v. Hyde (1974) 12 Cal.3d 158, 164 [115 Cal. Rptr. 358, 524 P.2d 830]; Dillon v. Superior Court (1972) 7 Cal.3d 305, 310 [102 Cal. Rptr. 161, 497 P.2d 505]; People v. Medina, supra, 7 Cal.3d 30, 41; People v. Bradley (1969) 1 Cal.3d 80, 84 [81 Cal. Rptr. 457, 460 P.2d 129]; People v. Edwards (1969) 71 Cal.2d 1096, 1104 [80 Cal. Rptr. 633, 458 P.2d 713].
[10] United States v. Martinez-Fuerte (1976) 428 U.S. 543, 554 [49 L.Ed.2d 1116, 1126, 96 S.Ct. 3074); Camara v. Municipal Court (1967) 387 U.S. 523, 528 [18 L.Ed.2d 930, 935, 87 S.Ct. 1727]; United States v. Hunter (6th Cir.1977) 550 F.2d 1066, 1074; People v. Newell, supra, 93 Cal. App.3d 29, 36.
[11] Terry v. Ohio (1968) 392 U.S. 1, 13 [20 L.Ed.2d 889, 901, 88 S.Ct. 1868].
[12] Terry v. Ohio, supra, 392 U.S. 1, 13 [20 L.Ed.2d 889, 901]; Nordskog v. Wainwright (5th Cir.1977) 546 F.2d 69, 72.
[13] Terry v. Ohio, supra, 392 U.S. 1, 12 [20 L.Ed.2d 889, 901]; Camara v. Municipal Court, supra, 387 U.S. 523, 528 [18 L.Ed.2d 930, 935]; People v. Tremayne (1971) 20 Cal. App.3d 1006, 1015 [98 Cal. Rptr. 193].
[14] United States v. Kaiser (5th Cir.1977) 545 F.2d 467, 477.
[15] Lorenzana v. Superior Court (1973) 9 Cal.3d 626, 634 [108 Cal. Rptr. 585, 511 P.2d 33]; see also Harris v. United States (1968) 390 U.S. 234, 236 [19 L.Ed.2d 1067, 1069, 88 S.Ct. 992]; Dillon v. Superior Court, supra, 7 Cal.3d 305, 310; Mozzetti v. Superior Court (1971) 4 Cal.3d 699, 707 [94 Cal. Rptr. 412, 484 P.2d 84].
[16] Harris v. United States, supra, 390 U.S. 234, 236 [19 L.Ed.2d 1067, 1069.]; United States v. Wilson (8th Cir.1975) 524 F.2d 595, 598; United States ex rel. LaBelle v. LaValle (2d Cir.1975) 517 F.2d 750, 755.
[17] United States v. Masciarelli (2d Cir.1977) 558 F.2d 1064, 1067; see also Frazier v. Cupp (1969) 394 U.S. 731, 740 [22 L.Ed.2d 684, 693, 89 S.Ct. 1420]; Harris v. United States (1947) 331 U.S. 145, 153-155 [91 L.Ed. 1399, 1407-1408, 67 S.Ct. 1098] (overruled on other grounds in Chimel v. California (1969) 395 U.S. 752, 768 [23 L.Ed.2d 685, 696, 89 S.Ct. 2034]); United States v. Sedillo (9th Cir.1974) 496 F.2d 151, 151-152; United States v. Gargotto (6th Cir.1973) 476 F.2d 1009, 1013; United States v. Nelson (10th Cir.1971) 448 F.2d 1304, 1307.
[18] United States v. Brand (5th Cir.1977) 556 F.2d 1312, 1317.
[1] "Seeing something in open view does not, of course, dispose, ipso facto, of the problem of crossing constitutionally protected thresholds. Those who thoughtlessly over-apply the plain view doctrine to every situation where there is a visual open view have not yet learned the simple lesson long since mastered by old hands at the burlesque houses, `You can't touch everything you can see'." (Moylan, The Plain View Doctrine: Unexpected Child of the Great `Search Incident' Geography Battle (1975) 26 Mercer L.Rev. 1047, 1096, fn.2.)
[2] When the court in Lorenzana spoke of "the salutary rule of law that observations of things in plain sight made from a place where a police officer has a right to be do not amount to a search in the constitutional sense" (9 Cal.3d at p. 634, italics added), the kind of "place" the court was referring to was a public vantage point. The next sentence in the opinion reads, "On the other hand, when observations are made from a position to which the officer has not been expressly or implicitly invited, the intrusion is unlawful unless executed pursuant to a warrant or one of the established exceptions to the warrant requirement." (Ibid.) Thus, Lorenzana does not provide precise focus upon the question presented here. Also inapposite are cases like People v. Willard (1965) 238 Cal. App.2d 292 [47 Cal. Rptr. 734], People v. Berutko (1969) 71 Cal.2d 84 [77 Cal. Rptr. 217, 453 P.2d 721], and People v. Bradley (1969) 71 Cal.3d 80 [81 Cal. Rptr. 457, 460 P.2d 129], distinguished in Lorenzana as cases in which a "police officer,... acting without a warrant, observes activities in a private residence while standing upon a part of the surrounding property that has been opened, expressly or impliedly, to public use...." (9 Cal.3d at p. 631.)
[3] The plurality opinion of Justice Stewart in Coolidge v. New Hampshire (1971) 403 U.S. 443 [29 L.Ed.2d 564, 91 S.Ct. 2022], dealing with the validity of seizure of evidence observed in plain view by an officer present on the premises for some other purpose is useful by way of analogy. Justice Stewart's opinion states: "Where the initial intrusion that brings the police within plain view of such an article is supported, not by a warrant, but by one of the recognized exceptions to the warrant requirement, the seizure is also legitimate. Thus the police may inadvertently come across evidence while in `hot pursuit' of a fleeing suspect. [Citations.] And an object that comes into view during a search incident to arrest that is appropriately limited in scope under existing law may be seized without a warrant. [Citation.] Finally, the `plain view' doctrine has been applied where a police officer is not searching for evidence against the accused, but nonetheless inadvertently comes across an incriminating object. [Citations.] [¶] What the `plain view' cases have in common is that the police officer in each of them had a prior justification for an intrusion in the course of which he came inadvertently across a piece of evidence incriminating the accused. The doctrine serves to supplement the prior justification  whether it be a warrant for another object, hot pursuit, search incident to lawful arrest, or some other legitimate reason for being present unconnected with a search directed against the accused  and permits the warrantless seizure." (Id., at pp. 465-466 [29 L.Ed.2d at pp. 582-583], italics added.)
[4] Professor LaFave notes that while it appears courts will be "generous ... in permitting the officer on the scene to draw all reasonable inferences," they "must be especially vigilant in guarding against subterfuge, that is, a false reliance upon the property protection rationale when the real purpose was to seek out evidence of crime." (2 La Fave, Search and Seizure, supra, § 6.6, p. 474.)
[5] A number of cases suggest that in determining the reasonableness of the search a weighing process must be applied, to assure that the intrusion was in fact justified by the objective circumstances reasonably viewed. (Cf. People v. Smith, supra, 7 Cal.3d at pp. 285-286; Horack v. Superior Court, supra, 3 Cal.3d at p. 725; Jacobs v. Superior Court, supra, 36 Cal. App.3d at pp. 493-494.)