[No. C003453. Third Dist. Oct. 31, 1988.]

THE PEOPLE, Plaintiff and Respondent, v.
EDDIE RAY RIOS, Defendant and Appellant.

**[Opinion certified for partial publication.*]**

* Pursuant to rule 976.1 of the California Rules of Court, all portions of this opinion shall be published except part II of the Discussion.

COUNSEL

Richard L. Phillips and Linnea M. Johnson, under appointments by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, Robert Anderson and Joel Carey, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

SIMS, J.—Defendant Eddie Ray Rios appeals following conviction by jury on two counts of first degree burglary (Pen. Code, § 459; all further statutory references are to this code unless otherwise indicated).[1]

On appeal defendant complains his motion to suppress evidence pursuant to section 1538.5 was erroneously denied. He asserts a sheriff's deputy unlawfully seized a television set when he searched defendant's home under the authority of a warrant. Defendant also alleges prejudice due to prosecutorial misconduct. In this published portion of our opinion, we conclude the deputy lawfully seized the television because it was in plain view and the deputy had probable cause to believe it was stolen even though he did not try to verify its stolen status by comparing its serial numbers with numbers of stolen property maintained by law enforcement. In an unpublished portion of this opinion we conclude defendant suffered no prejudice on account of any prosecutorial misconduct at trial. Accordingly, we shall affirm the judgment.

---

[1] In a bifurcated court trial, two enhancements were also found true: a prior serious felony conviction (§ 667) and a prior felony for which defendant served a prison term (§ 667.5, subd. (b)).

FACTS MATERIAL TO THE SECTION 1538.5 MOTION

The facts before the trial court material to defendant's section 1538.5 motion are as follows: [2]

On October 14, 1986, Deputy Sheriff Gary Horat, a detective with the Sacramento County Sheriff's Department assigned to the burglary division, submitted an affidavit in support of issuance of a search warrant stating in material part as follows:

"On 10/6/86, I was contacted by Sacramento Police Burglary Detective G. Bierer, #226. Bierer has prepared a report (SPD #86-71502) involving the sale of six rings. Bierer further related that the owner of the Common To Key Coin Shop, Bob Shirley, had made two purchases of rings from three separate suspects, which he believed to be stolen. Shirley had obtained California drivers license from the suspects. One of the rings, a Masonic ring, was engraved with the name R.G. Kistler. This transaction occured [sic] on October 2, 1986.

"On 10/3/86, the suspects returned with additional property to sale [sic]. Shirley again saw the vehicle the suspects arrived in and this time obtained the license plate which was 059KUU and the plate was on a 1974 primer Chevrolet. The suspects had parked the vehicle directly in front of the business. Shirley described the suspects as male Mexican adults.

"Det. Bierer obtained the rings from Shirley and contacted the Sheriff's Department and located report #86-85315, which listed Raymond George Kistler, who resides at 9145 Clendenon Dr., the victim of a residential burglary on 9/22/86 between the hours of 0620 and 1415.

"Det. Bierer then contacted the victim Kistler who confirmed that the rings belonged to him and were taken during the burglary of his residence and that an additional $20,000 to $30,000 worth of property was taken.

"Det. Bierer then contacted both myself and Det. Schmalz, #31, in regards to the above information.

"Det. Schmalz, who works the Rancho Cordova area, obtained a copy of Raymond Kistler's burglary report.

---

[2] This recitation of facts is taken from testimony adduced at the section 1538.5 hearing and from the affidavit in support of the warrant which was introduced in evidence at the hearing of the motion by defendant. (See *People* v. *Albritton* (1982) 138 Cal.App.3d 79, 82 [187 Cal.Rptr. 652].)

"A copy of the Crime Scene Investigation report prepared by CSI Officer McGinness, #75, and Ezell, #566, indicated that a small piece of an electrical plug and a small piece of microwave and dial stolen from the victim were located near the victim's rear fence leading into the rear yard of 9300 Henley Way.

"Furthermore, the same CSI Investigators indicated that a burglary occurred at 9141 Clendenon Dr. on 9/4/86 to the victim John Skarda, SSD #86-79638. This report also stated that boards had been removed from Skarda's rear fence, which also led to the rear yard of 9300 Henley Way.

"On 10/8/86, a fingerprint comparison was made by Technical Services Officer M. Kidwell, #644. This comparison was positive to suspect Eddie Ray Rios when compared to latent prints found on the interior windowsill below the point of entry at the Skarda residence.

"Suspect Eddie Ray Rios indicates his address to be 9300 Henley Way.

"On 10/10/86, Det. Schmalz drove by suspect Rios's residence at 9300 Henley Way and observed the same 1974 primer gray Chevrolet bearing California license 059KUU, which was observed by the owner of the Common to Key Coin Shop."

On the same day, a magistrate issued a warrant authorizing a search of defendant's residence for various items of personal property *not* including a television set. The authorization in the warrant also said, "See attached copy of missing property report number 86-85315 involving victim Kistler." However, the Kistler missing property report was attached neither to the warrant nor to Deputy Horat's affidavit.

Later the same day, Deputy Horat served the warrant and searched the house at 9300 Henley Way. Home at the time was Donna Ayers who lived there with defendant.

In the course of the search, Deputy Horat noticed a television set in plain view on the kitchen counter. Deputy Horat had previously reviewed the theft report of the Kistler burglary and knew that an item of stolen property listed in the report was a small portable Liberty television set. The television on the kitchen counter matched precisely the description in the Kistler stolen property report.

Deputy Horat asked Donna Ayers who the television belonged to and she told him her "husband" had brought it into the residence about a month

before. Believing the television had been stolen in the Kistler burglary, Horat seized it.

DISCUSSION

I

*The seizure of the Liberty television set was lawful.*

Defendant contends the television was not described in the search warrant and the prosecution failed to justify its seizure on the theory it was in plain view.

A.  *The television was not described in the warrant.*

■  The People contend the television was described in the search warrant because it was identified in the Kistler missing property report that is referenced in the warrant. However, we have carefully reviewed the record and agree with defendant that the Kistler missing property report was attached neither to the affidavit nor to the warrant, doubtless because of inadvertence. The document the People claim is the Kistler missing property report is, in fact, the return to the search warrant (§ 1537) filed by Deputy Horat after the search of the Kistler residence and describing the property seized. Our conclusion is in accord with the assumptions upon which the parties proceeded in the trial court, where the People undertook to justify the seizure of the television on the ground it was in plain view and not described in the warrant.

B.  *Deputy Horat had probable cause to believe the television was stolen property so that its plain view seizure was lawful.*

We must therefore determine whether Deputy Horat's seizure of the television was justified upon the theory that it was stolen property in plain view. We conclude the seizure was lawful.

Our task is to determine whether suppression of the television is required by exclusionary rules necessary to enforce the Fourth Amendment to the United States Constitution. (Cal. Const., art. I, § 28, subd. (d); *In re Lance W.* (1985) 37 Cal.3d 873, 879 [210 Cal.Rptr. 631, 694 P.2d 744]; *People* v. *Rogers* (1986) 187 Cal.App.3d 1001, 1006 [232 Cal.Rptr. 294].)

■  It has long been settled that stolen property that is in the plain view of an officer who has the right to be in a position to have that view is subject

to seizure under the Fourth Amendment. (*Harris* v. *United States* (1968) 390 U.S. 234, 236 [19 L.Ed.2d 1067, 1069, 88 S.Ct. 992], *People* v. *Williams* (1988) 198 Cal.App.3d 873, 888 [243 Cal.Rptr. 914].) Here, there is no dispute that Deputy Horat had a right to be in defendant's residence and that the television was in plain view. The issue is whether the officer had sufficient knowledge that the television was stolen.

In *Warden* v. *Hayden* (1967) 387 U.S. 294 [18 L.Ed.2d 782, 87 S.Ct. 1642], the Supreme Court concluded, under the Fourth Amendment, that if private property is to be seized without a warrant, "There must . . . be a nexus—automatically provided in the case of fruits, instrumentalities or contraband—between the item to be seized and criminal behavior. Thus in the case of 'mere evidence,' probable cause must be examined in terms of cause to believe that the evidence sought will aid in a particular apprehension or conviction." (*Id.,* 387 U.S. at p. 307 [18 L.Ed.2d at p. 792].)

The California Supreme Court has construed *Warden's* "nexus" requirement as meaning that a police officer must be " ' "presently aware of some specific and articulable fact from which a rational link between the item seized and criminal behavior [could] be inferred. . . ." ' (*People* v. *Superior Court* (*Meyers*) (1979) 25 Cal.3d 67, 73-74 [157 Cal.Rptr. 716, 598 P.2d 877], quoting *People* v. *Hill* (1974) 12 Cal.3d 731, 763 [117 Cal.Rptr. 393, 528 P.2d 1].)" (*People* v. *Easley* (1983) 34 Cal.3d 858, 872 [196 Cal.Rptr. 309, 671 P.2d 813].)

Last term, in *Arizona* v. *Hicks* (1987) 480 U.S. 321 [94 L.Ed.2d 347, 107 S.Ct. 1149], the high court discussed specifically the circumstances in which private property could be seized without a warrant on the ground the property was stolen and in plain view. The court held that, except in circumstances not present here (see *id.,* 480 U.S. at p. 327 [94 L.Ed.2d at p. 355]), police officers lawfully inside a residence could not seize property in plain view, but not described in a warrant, on the ground the property was stolen unless the police had probable cause to believe the property was stolen. (*Id.,* 480 U.S. at pp. 326-327 [94 L.Ed.2d at pp. 354-355].)

Although *Hicks* curiously fails to cite *Warden,* we view *Hicks* as merely a specific application of the *Warden* test, not as a departure from it. Thus, in *People* v. *Miller* (1976) 60 Cal.App.3d 849 [131 Cal.Rptr. 863], this court expressly recognized that *Warden's* "nexus rule pivots on the officer's probable cause to believe that the seized article will aid in a particular apprehension or conviction." (*Id.,* at p. 853.) ▇ Thus, if an officer has probable cause to believe an item of property is stolen, as required by *Hicks,* then a sufficient "nexus" has been shown as a matter of law to satisfy *Warden.* We

therefore focus on whether Deputy Horat had probable cause to believe the television was stolen property.

■ In *Texas* v. *Brown* (1983) 460 U.S. 730 [75 L.Ed.2d 502, 103 S.Ct. 1535] the Supreme Court[3] noted that "probable cause is a flexible, common-sense standard. It merely requires that the facts available to the officer would 'warrant a man of reasonable caution in the belief,' *Carroll* v. *United States,* 267 U.S. 132, 162 [69 L.Ed. 543, 45 S.Ct. 280] (1925), that certain items may be contraband or stolen property or useful as evidence of a crime; it does not demand any showing that such a belief be correct or more likely true than false. A 'practical, nontechnical,' probability that incriminating evidence is involved is all that is required. *Brinegar* v. *United States,* 338 U.S. 160, 176 [93 L.Ed. 1879, 69 S.Ct. 1302] (1949). Moreover, our observation in *United States* v. *Cortez,* 449 U.S. 411, 418 [66 L.Ed.2d 621, 101 S.Ct. 690] (1980), regarding 'particularized suspicion,' is equally applicable to the probable-cause requirement:

" 'The process does not deal with hard certainties, but with probabilities. Long before the law of probabilities was articulated as such, practical people formulated certain common-sense conclusions about human behavior; jurors as factfinders are permitted to do the same—and so are law enforcement officers. Finally, the evidence thus collected must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement.' " (*Texas* v. *Brown, supra,* 460 U.S. at p. 742 [75 L.Ed.2d at p. 514].)

■ In determining whether there is probable cause to believe property has been stolen, a police officer may consider all circumstances reasonably bearing on the question; the officer is not limited to an examination of the item of property itself. (*People* v. *Miller, supra,* 60 Cal.App.3d at p. 853; see *People* v. *Williams, supra,* 198 Cal.App.3d at p. 890.) Thus, for example, descriptions of stolen property in police reports may supply an officer with probable cause to believe property in plain view has been stolen. (See *Skelton* v. *Superior Court* (1969) 1 Cal.3d 144, 148 [81 Cal.Rptr. 613, 460 P.2d 485].)

■ Here, Deputy Horat was aware of specific and articulable facts upon which he could reasonably believe the Liberty television had been stolen in the Kistler burglary. Thus, the facts set forth in the affidavit in support of

---

[3]The lead opinion was written by then Justice (now Chief Justice) Rehnquist with three other justices concurring without opinion. Justice White wrote a concurring opinion in which he made clear that he agreed with Justice Rehnquist's opinion. (*Texas* v. *Brown, supra,* 460 U.S. at p. 730 [75 L.Ed.2d at p. 503].) Hence, a majority of the court adopted the probable cause rule stated in our opinion.

the warrant showed the officer had reasonable cause to believe that defendant Rios had participated in the Kistler burglary and that property taken in the burglary had been passed over a fence into the back yard of defendant's house, which was subject to search pursuant to the warrant. These facts, together with the fact the television set matched precisely, by brand and size, the television taken in the Kistler burglary, and Donna Ayers's statement that the television had entered defendant's residence at about the time of the Kistler burglary, would lead a person of reasonable caution to believe that the Liberty television had made its way unlawfully from the Kistler residence over the back fence and into defendant's residence. We conclude Deputy Horat had probable cause to believe the Liberty television set was stolen property. (See *Texas* v. *Brown, supra*, 460 U.S. at pp. 743-744 [75 L.Ed.2d at pp. 514-515]; *People* v. *Williams, supra*, 198 Cal.App.3d at p. 890.)

Relying on *People* v. *Murray* (1978) 77 Cal.App.3d 305 [143 Cal.Rptr. 502] and *Nunes* v. *Superior Court* (1980) 100 Cal.App.3d 915 [161 Cal.Rptr. 351], defendant contends the deputy could not seize the television until he had verified by serial number that the television had been stolen. However, these cases are distinguishable. In *Murray*, the officers seizing the televisions had no information whatsoever to connect the televisions with any specific burglaries. The same is true of the police seizure in *Arizona* v. *Hicks, supra*, 480 U.S. at page 324 [94 L.Ed.2d at page 353].[4]

In *Nunes*, the court held officers seized items unlawfully "on the general suspicion that they coincided with descriptions of stolen property contained in police reports not in their possession." (*Nunes, supra*, 100 Cal.App.3d at p. 932.) There was no evidence the officers had personally reviewed the reports before seizing the items. (*Id.*, at pp. 927-928.) The *Nunes* court expressly noted that "the officers in the instant case did not have the victims' identification to form their 'honest and strong suspicion.'" (*Id.*, at p. 932.)

Here, the totality of circumstances known to Deputy Horat gave the officer probable cause to believe the television had been stolen from Mr. Kistler. Although a comparison of serial numbers would have shown to a near certainty that the television was Mr. Kistler's,[5] Deputy Horat was not required to be certain but only to have a reasonable belief that the property was stolen. (See *Arizona* v. *Hicks, supra*, 480 U.S. at p. 327 [94 L.Ed.2d at

---

[4]Although not cited by the parties, the same is true of the seizures in *People* v. *Albritton* (1982) 138 Cal.App.3d 79 [187 Cal.Rptr. 652] and *People* v. *Sedillo* (1982) 135 Cal.App.3d 616 [185 Cal.Rptr. 475].

[5]However, no evidence received at the hearing on the motion suggested that Mr. Kistler knew the serial number or had reported it to law enforcement.

p. 355]; *Texas* v. *Brown, supra,* 460 U.S. at p. 742 [75 L.Ed.2d at p. 514].) A verification of the stolen status of property by a comparison of serial numbers is not a requirement for probable cause in every case. Since Deputy Horat had the requisite probable cause without verifying serial numbers, he did not have to verify the numbers before seizing the television. (See *People* v. *Williams, supra,* 198 Cal.App.3d at p. 890.)

The trial court properly denied defendant's 1538.5 motion. (*Ibid.,* see *People* v. *Miller, supra,* 60 Cal.App.3d at p. 854.)

II*

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

DISPOSITION

The judgment is affirmed.

Carr, Acting P. J., and Deegan, J.,† concurred.

Appellant's petition for review by the Supreme Court was denied January 19, 1989.

---

*See footnote, *ante,* page 833.

†Retired judge of the superior court sitting under assignment by the Chairperson of the Judicial Council.