[No. B033483. Second Dist., Div. Three. Aug. 7, 1989.]

THE PEOPLE, Plaintiff and Respondent, v.
HERBIE CLARK, Defendant and Appellant.

## COUNSEL

Fay Arfa, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, Edward T. Fogel, Jr., Assistant Attorney General, John R. Gorey and Ivy K. Kessel, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**CROSKEY, J.**—Following the denial of his motion to suppress evidence (Pen. Code, § 1538.5), appellant Herbie Clark pleaded nolo contendere and was found guilty of burglary (Pen. Code, § 459). He was sentenced to state prison for the low term of two years. As we conclude there was no unlawful search or seizure and the motion to suppress was properly denied, we affirm.

### FACTUAL BACKGROUND

At approximately 7:15 p.m. on November 1, 1987, Los Angeles County Deputy Sheriff Brian Hawksley was in Plummer Park with his partner Deputy Rangel when he saw appellant, who appeared to be a transient, slumped over on a park bench. In order to ascertain if appellant was sick, drunk or under the influence of narcotics, they approached and Deputy Rangel asked appellant if he was all right. Appellant mumbled something incomprehensible. Although he only showed signs of having been sleeping, the deputies were still concerned about his well-being, and Deputy Rangel asked his name. Appellant said, "Herbie." He stated that he had some papers in his pocket with his name and, without being asked to do so, started to reach into his jacket pocket to retrieve them.

It was twilight and, concerned that appellant might have a weapon, the deputies illuminated appellant's pocket with a flashlight. As appellant pulled out a wallet, they saw a "clump" of ladies' watches and miscellaneous jewelry in the pocket. Although the deputies had no specific information that the items had been stolen, they were aware of a high incidence of

burglaries in the area and observed that appellant was already wearing a watch. The deputies removed the jewelry from the pocket for inspection. While perusing the items, which included three ladies' watches, a pocket watch, a broach, and a ring, the deputies detained appellant and asked him where he had obtained the jewelry, which appeared to be very expensive. Appellant became nervous and stated that he had found some of the jewelry in vacant houses and had purchased some on the street for a few dollars. Appellant then ran from the deputies. After a pursuit, he was apprehended; he again tried to run, but was subdued and placed under arrest. A subsequent booking search produced additional items of jewelry.

## CONTENTIONS ON APPEAL

Appellant appeals from the judgment entered following his plea of no contest after denial of his motion to suppress evidence (Pen. Code, § 1538.5). Appellant contends that (1) he was illegally detained, and (2) the evidence was illegally seized.

## DISCUSSION

Appellant asks us to apply the exclusionary rule to evidence found in plain view. ■ Pursuant to the June 1982 passage of Proposition 8, which became section 28, subdivision (d), of article I of the California Constitution, evidence will be excluded only when it was obtained in violation of the federal Constitution. (*In re Lance W.* (1985) 37 Cal.3d 873, 879 [210 Cal.Rptr. 631, 694 P.2d 744].)

### 1. *Appellant Was Not Unlawfully Detained.*

■ Appellant's claim that he was unlawfully detained prior to the discovery of the jewelry is without merit, because the conversation between appellant and the deputies did not rise to the level of a detention. Two decades ago the United States Supreme Court authorized such consensual encounters. (*Terry* v. *Ohio* (1968) 392 U.S. 1, 19, fn. 16 [20 L.Ed.2d 889, 906, 88 S.Ct. 1868].) More recently, this has been affirmed by cases such as *Florida* v. *Royer* (1983) 460 U.S. 491, 497-498 [75 L.Ed.2d 229, 236, 103 S.Ct. 1319]: "[L]aw enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street . . . [and] putting questions to him if the person is willing to listen . . . ." (See also *People* v. *Gonzalez* (1985) 164 Cal.App.3d 1194, 1196 [211 Cal.Rptr. 74]; *Wilson* v. *Superior Court* (1983) 34 Cal.3d 777, 789 [195 Cal.Rptr. 671, 670 P.2d 325].) Requesting appellant to identify himself did not transform the encounter into a detention. (*People* v. *Franklin* (1987) 192 Cal.App.3d 935,

941 [237 Cal.Rptr. 840].) It is therefore clear that prior to the discovery of the jewelry there was no detention, lawful or otherwise.

2. *The Jewelry Was Discovered in Plain View, Thus Supporting Both the Temporary Detention and Arrest of Appellant.*

a. *The Plain View Discovery and Inspection of the Jewelry Was Lawful.*

We find that the discovery and inspection of the jewelry was lawful. In so doing, we bring California law into accord with the current federal application of the plain view doctrine.

■ It is clear that the discovery of the jewelry, which occurred when appellant voluntarily opened his jacket pocket, was not the result of an unconstitutional search. "What a person knowingly exposes to the public . . . is not a subject of Fourth Amendment protection." (*Katz* v. *United States* (1967) 389 U.S. 347, 351 [19 L.Ed.2d 576, 582, 88 S.Ct. 507]; see also *People* v. *Superior Court (Spielman)* (1980) 102 Cal.App.3d 342, 346 [162 Cal.Rptr. 295]; *Lorenzana* v. *Superior Court* (1973) 9 Cal.3d 626, 634 [108 Cal.Rptr. 585, 511 P.2d 33].) The deputies' use of a flashlight to illuminate the interior of the jacket pocket did not change the plain view nature of the discovery. (*People* v. *Woods* (1970) 6 Cal.App.3d 832, 838 [86 Cal.Rptr. 264]; cf. *Texas* v. *Brown* (1982) 460 U.S. 730, 739-740 [75 L.Ed.2d 502, 512, 103 S.Ct. 1535].)

It is less clear that the officers acted properly in removing the jewelry from appellant's pocket for inspection. ■ The original standard for plain view seizures was enunciated by a plurality opinion in *Coolidge* v. *New Hampshire* (1970) 403 U.S. 443, 465-467 [29 L.Ed.2d 564, 582-583, 91 S.Ct. 2022]: (1) the officer must be lawfully at the place where the evidence is discovered, (2) the discovery must be inadvertent, and (3) the object discovered must be "immediately apparent" as evidence. The phrase "immediately apparent" means probable cause must exist to believe the object is evidence prior to a Fourth Amendment seizure. (*Arizona* v. *Hicks* (1987) 480 U.S. 321, 327 [94 L.Ed.2d 347, 355, 107 S.Ct. 1149]; *People* v. *Rios* (1988) 205 Cal.App.3d 833, 839-840 [252 Cal.Rptr. 653].) The question arising here is whether the brief inspection of the jewelry found in plain view in appellant's pocket constituted a Fourth Amendment seizure without probable cause. Although no California cases appear to address this issue, there is a substantial body of federal case law on the subject.

In 1979, Judge Friendly stated that when a police officer "comes upon a suspicious object, *he is entitled to inspect it*"; if the object is found to be

contraband or evidence, the officer may then formally seize it. (*United States* v. *Ochs* (2d Cir. 1979) 595 F.2d 1247, 1256, cert. den. 444 U.S. 955 [62 L.Ed.2d 328, 100 S.Ct. 435], italics added.) The Ninth Circuit has agreed with *Ochs,* reasoning that the incriminating nature of an object may not be immediately apparent without a closer examination. (*United States* v. *Wright* (9th Cir. 1982) 667 F.2d 793, 797.) Items in plain view may be inspected when the officer is " 'aware of some facts and circumstances which justify a *reasonable suspicion* (not probable cause) that the items are the fruits, instrumentalities, or evidence of crime.' " (*Id.* at pp. 797-798, quoting 2 LaFave, Search and Seizure (1st ed. 1978) § 4.11, p. 174, italics added.) The reasonable suspicion requirement permits a brief perusal without allowing "exploratory rummaging in a person's belongings." (*Ibid.*; see also *United States* v. *Issacs* (9th Cir. 1983) 708 F.2d 1365, 1370; *United States* v. *Chesher* (9th Cir. 1982) 678 F.2d 1353, 1357; *United States* v. *Hillyard* (9th Cir. 1982) 677 F.2d 1336, 1341.) If no probable cause arises within a reasonable time, the property must be returned. (*United States* v. *Place* (1983) 462 U.S. 696, 709-710 [77 L.Ed.2d 110, 122, 103 S.Ct. 2637].)

■ Here, appellant was (1) slumped over a park bench after sundown, (2) appeared to be a transient, (3) was unable to speak clearly to the officers, and (4) was already wearing a men's watch on his wrist, when, (5) in an area with a high incidence of burglaries, (6) the deputies saw a number of apparently expensive ladies' watches and other jewelry in plain view in appellant's pocket. While these circumstances may not create probable cause and may in fact be totally innocent, when taken together with their "rational inferences" they clearly create a reasonable suspicion justifying further investigation. (*Terry* v. *Ohio, supra,* 392 U.S. at pp. 21-22 [20 L.Ed.2d at pp. 905-906]; *In re Tony C.* (1978) 21 Cal.3d 888, 894 [148 Cal.Rptr. 366, 582 P.2d 957].)

A brief perusal of the jewelry by the deputies here might have quickly determined whether it was actually evidence. The jewelry might well have carried names or other identifying marks which would have immediately suggested appellant's ownership or right to possession; conversely, it might have carried such marks, or matched descriptions of objects previously reported stolen, which would have created probable cause to seize the property as evidence. Therefore, based on the presence of reasonable suspicion, we hold that the deputies acted lawfully when they removed for further inspection the jewelry seen in plain view in appellant's pocket.[1]

---

[1] Although such a "cursory inspection" without probable cause was not recognized in *Arizona* v. *Hicks, supra,* 480 U.S. at page 325 [94 L.Ed.2d at page 354], that case is clearly distinguishable. There, as police officers investigated a shooting in an unoccupied "ill-appointed" apartment, they saw expensive stereo equipment in plain view. Reasonably suspecting that it might be stolen, one officer picked up a turntable to find its serial number. That court held

b. *The Temporary Detention and Subsequent Arrest of Appellant Were Lawful.*

■ The same reasonable suspicion that justified the inspection of the jewelry also permitted the deputies to temporarily detain appellant. "It is settled that circumstances short of probable cause to make an arrest may justify a police officer stopping and briefly detaining a person for questioning or other limited investigation." (*In re Tony C., supra,* 21 Cal.3d at p. 892; see also *Terry* v. *Ohio, supra,* 392 U.S. at pp. 19-22 [20 L.Ed.2d at pp. 904-907].) In light of the facts surrounding the discovery of the jewelry, the temporary detention of appellant was reasonable and lawful.

■ When appellant ran from the officers, they acted properly in arresting him. A "low price paid in comparison with the value of the property is a suspicious circumstance. [Citation.]" (*In re Stanley B.* (1971) 17 Cal.App.3d 530, 537 [95 Cal.Rptr. 116].) Inconsistent explanations of possession of property in suspicious circumstances, when coupled with flight, create probable cause to arrest. (*People* v. *Garcia* (1981) 121 Cal.App.3d 239, 246 [175 Cal.Rptr. 296].)

In the present case, the deputies asked appellant several questions as they inspected the jewelry, which appeared to be very expensive. Appellant, becoming increasingly nervous, claimed to have found some of the jewelry in vacant houses, and purchased other items "on the street" at a low price. Appellant then ran from the deputies until apprehended; appellant again tried to escape, at which time he was subdued and arrested. In light of these facts and circumstances, and the reasonable inferences that can be drawn from them, the deputies had probable cause to arrest appellant.

## CONCLUSION

There is no evidence that the deputies acted unlawfully during the encounter with appellant: (1) The initial contact was consensual and therefore permissible; (2) the inadvertent discovery of the jewelry was legal under the

---

that *any* movement of the object required probable cause. (*Ibid.*) Here, the discovery of the jewelry created reasonable suspicion which justified the immediate temporary investigative detention of appellant under *Terry* v. *Ohio, supra,* 392 U.S. at pages 19-22 [20 L.Ed.2d at pages 904-905]. (See discussion, *post.*) Thus, unlike *Hicks,* the objects examined here were in the personal possession of a detainee. This is more closely analogous to *United States* v. *Place, supra,* 462 U.S. at page 702 [77 L.Ed.2d at page 117], which authorized brief airport detentions of personal luggage based on reasonable suspicion. The *Place* court extended the Terry investigative detention to include a detainee's possessions. (*Ibid.*) "[I]t is difficult to see why it is more intrusive . . . to dispossess the suspect of his luggage [than to detain the suspect himself]." (3 LaFave, Search & Seizure (2d ed. 1987) § 9.6(e), p. 590.) We therefore apply the *Place* rationale in this case.

plain view doctrine, and created a reasonable suspicion which (a) permitted the deputies to remove it from appellant's pocket for further inspection and (b) allowed a temporary investigative detention of appellant; and finally (3) the totality of the circumstances (including appellant's flight) created probable cause to arrest. Because no unlawful search or seizure occurred, the motion to suppress evidence was properly denied.

### DISPOSITION

The judgment is affirmed.

Danielson, Acting P. J., and Arabian, J., concurred.

Appellant's petition for review by the Supreme Court was denied October 26, 1989.