[No. G015547. Fourth Dist., Div. Three. June 20, 1995.]

THE PEOPLE, Plaintiff and Respondent, v.
MARCO ANTONIO CASTANEDA, Defendant and Appellant.

## COUNSEL

Michael Linfield, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Keith I. Motley, Garrett Beaumont and Pat Zaharopoulos, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**SILLS, P. J.**—Marco Antonio Castaneda appeals his convictions for drug possession on two separate occasions after the trial court denied his motion to suppress evidence. He raises the same issue on appeal as he did in his motion: did the police officers unreasonably detain and frisk him? We affirm.

### FACTS

In 1989, a police officer contacted Castaneda while he was seated in the passenger seat of an illegally parked car. The officer, Charles Carvajal,

requested identification and asked him who owned the car. Castaneda handed him his identification card and told him a friend who lived in a nearby apartment was the owner but he did not know where the friend was or which apartment was his residence. Carvajal requested information on the car's registration as well as Castaneda via his radio while another officer filled out a parking citation for the car. The information he received showed an outstanding warrant for Castaneda's arrest. Carvajal arrested him on the warrant and a personal search incident to the arrest revealed marijuana and cocaine in Castaneda's pockets. The whole incident took about eight minutes from the time Carvajal first decided to approach the car until Castaneda was placed under arrest.[1]

After his arrest, Castaneda left the country, returning sometime before August 1993. He again was seated in a parked car when contacted by a police officer investigating a citizen's report of a possible prowler. The car attracted the officer's attention because it was parked in a commercial area in which all the businesses were closed and to which the citizen's report had directed him. When asked for identification, Castaneda and his passenger indicated they had none, speaking only in Spanish, which the officer could not understand.

The officer asked Castaneda to step out of the car and patted him for weapons, finding a loaded magazine from a .38-caliber handgun in his pocket and a package under his belt. Based on past experience, the officer suspected the package contained more bullets. Opening it, he discovered heroin.

## DISCUSSION

Castaneda contends the officers unreasonably detained him by running a warrant check in 1989 and then failed to give him a chance to post bail before placing him under arrest. He also argued the officer in 1993 violated his Fourth Amendment rights when he patted him down for weapons. The magistrate disagreed with these contentions, as do we.

### The Detention in 1989

 Castaneda contends (1) no justification existed to support his detention in 1989; (2) the detention, if justified, was unduly prolonged rendering his subsequent arrest unreasonable; and (3) placing him in custody

---

[1]Parties on appeal dispute the amount of time the whole incident consumed. The record, however, if read carefully, reveals the overall time period was nine minutes from his radio report that he was approaching to investigate the vehicle until his report of the arrest, which occurred about one minute before the radio report.

instead of permitting him to post bail was improper. ■ In reviewing the denial of a motion to suppress, we must accept all facts in favor of the ruling, including all reasonable inferences and deductions, if supported by substantial evidence. (See *People* v. *Miranda* (1993) 17 Cal.App.4th 917, 922 [21 Cal.Rptr.2d 785].) We emphasize " ' "the reasonableness in all the circumstances of the particular governmental invasion of a citizen's personal security" ' is the guiding principle. . . ." (*People* v. *Grant* (1990) 217 Cal.App.3d 1451, 1458 [266 Cal.Rptr. 587].)

■ An officer has every right to talk to anyone he encounters while regularly performing his duties, such as investigating illegal parking (*People* v. *Dickey* (1994) 21 Cal.App.4th 952, 954-955 [27 Cal.Rptr.2d 44]) or cars parked in lots late at night (*People* v. *Sandoval* (1985) 164 Cal.App.3d 958, 962 [211 Cal.Rptr. 1]). Until the officer asserts some restraint on the contact's freedom to move, no detention occurs. (*Ibid.*; see also *California* v. *Hodari D.* (1991) 499 U.S. 621, 629 [113 L.Ed.2d 690, 699, 111 S.Ct. 1547] ["In sum, assuming that (the officer's) pursuit in the present case constituted a 'show of authority' enjoining Hodari to halt, since Hodari did not comply with that injunction he was not seized until he was tackled. . . ."].)

■ Castaneda was not detained simply because an officer approached him and began talking to him. And the officer's requesting identification from him did not—by itself—escalate the encounter to a detention. (*People* v. *Clark* (1989) 212 Cal.App.3d 1233, 1237-1238 [261 Cal.Rptr. 181]; see also *People* v. *Lopez* (1989) 212 Cal.App.3d 289, 292 [260 Cal.Rptr. 641].) ■ The test is at what point in the conversation would "a reasonable person [no longer] feel free to leave. . . ." (*Lopez, supra,* 212 Cal.App.3d at p. 292.) This is an objective test, and "[n]either the officer's uncommunicated state of mind nor the subjective belief of the individual citizen is relevant . . . ." (*In re Christopher B.* (1990) 219 Cal.App.3d 455, 460 [268 Cal.Rptr. 8].)

■ Although Castaneda was not restrained by the officer asking for identification, once Castaneda complied with his request and submitted his identification card to the officers, a reasonable person would not have felt free to leave. And once the officers began writing the parking ticket, *no one* would have tried to walk away from them.

Once Castaneda was detained, Carvajal did two things: he radioed Castaneda's identity for a warrant check and also requested information regarding the car's registration and ownership, suspecting Castaneda was the car's real owner who was attempting to avoid responsibility for illegally parking

it. ▪ Under the principle enunciated in *People* v. *McGaughran* (1979) 25 Cal.3d 577 [159 Cal.Rptr. 191, 601 P.2d 207], an officer cannot prolong a detention based on a traffic violation in order to run a warrant check. ▪ But this was not a detention based simply on a traffic violation by a driver. It was an encounter between a passenger of an illegally parked car and the officer when the officer could reasonably suspect the passenger was not being honest about the car's ownership. Moreover, running a check on the car's owner was essential to confirm Castaneda's denial of ownership or responsibility; this was done simultaneously with the warrant check. (Cf. *People* v. *DeCosse* (1986) 183 Cal.App.3d 404, 410 [228 Cal.Rptr. 114] [a series of suspicious circumstances warranted a radio check and demand for verification of questionable information provided by suspect]; see also *United States* v. *Hensley* (1985) 469 U.S. 221, 228-229 [83 L.Ed.2d 604, 611-613, 105 S.Ct. 675] [police may detain suspect for a completed crime if they have belief suspect is involved but lack probable cause to arrest].) Thus, Castaneda's detention was not "unduly prolonged."

▪ As *McGaughran* held, "If a warrant check can be completed within [the] . . . period [necessary to complete legitimate business], no reason appears to hold it improper: because it would not add to the delay already lawfully experienced by the offender . . . [;] it would not represent any further intrusion on his rights." (25 Cal.3d, *supra*, at p. 584, fn. omitted.) ▪ That is what occurred here. And once the information came back verifying Castaneda was *not* the owner, Carvajal also received the news about the outstanding warrant, justifying the arrest.

After arresting him, however, Castaneda contends the officer failed to permit him to post bail instead of transporting him to the station. This deprivation, he argues, resulted in the officer's searching him before placing him in the police car and finding the small amounts of marijuana and cocaine.

▪ Whether the offense is bailable is not determinative (*United States* v. *Robinson* (1973) 414 U.S. 218, 234-236 [38 L.Ed.2d 427, 439-441, 94 S.Ct. 467]; *Gustafson* v. *Florida* (1973) 414 U.S. 260 [38 L.Ed.2d 456, 94 S.Ct. 488]), we are bound by those federal decisions admitting evidence from searches incidental to lawful arrests (see *In re Lance W.* (1985) 37 Cal.3d 873, 886-887 [210 Cal.Rptr. 631, 694 P.2d 744]) *even if* the underlying warrant was for a bailable offense. As noted in *People* v. *Sanchez* (1985) 174 Cal.App.3d 343 [220 Cal.Rptr. 53] and *In re Demetrius A.* (1989) 208 Cal.App.3d 1245 [256 Cal.Rptr. 717], the rule of *People* v. *Longwill* (1975) 14 Cal.3d 943 [123 Cal.Rptr. 297, 538 P.2d 753] that someone arrested for a bailable offense cannot be searched is abrogated by the passage of Proposition 8. Thus, Castaneda's reliance on those early cases mandating suspects

be given an opportunity to post bail before being placed in custody (*People v. Superior Court* (1972) 7 Cal.3d 186, 194 [101 Cal.Rptr. 837, 496 P.2d 1205]; *Carpio v. Superior Court* (1971) 19 Cal.App.3d 790 [97 Cal.Rptr. 186]; *People v. Collin* (1973) 35 Cal.App.3d 416 [110 Cal.Rptr. 869]; *People v. Gilliam* (1974) 41 Cal.App.3d 181 [116 Cal.Rptr. 317]) is misplaced. Proposition 8 eliminated the independent grounds for suppression under the state Constitution, which was the basis for these rulings. (*In re Lance W., supra*, 37 Cal.3d at pp. 886-887.)

### *The Detention in 1993*

■ Castaneda argues the policeman, Richard Jones, improperly ordered him out of his car in August 1993 and unjustifiably patted him for weapons. He alleges he was merely parked in a car with his wife in front of his own home. Jones wrongfully suspected a possible prowler from a citizen's complaint of a barking dog in the neighborhood and thus, failed to have sufficient grounds to detain him at all.

When Jones arrived at the "commercial or industrial" area, the only information he had was that there was a report of a suspected prowler at the adjacent business. After Castaneda's arrest, another officer arrived who spoke Spanish. Translating for Jones, he determined Castaneda resided inside of one of the adjacent businesses.

Jones arrived in a commercial and light industry area about 11:20 p.m. to investigate a citizen's report of a possible prowler. He saw several cars parked in the lot, but no other people were visible except for Castaneda and his passenger. He suspected they might be the suspected prowler or burglar of the business. He approached them and asked for identification; they responded only in Spanish, which Jones did not understand. Jones asked Castaneda, the driver, to alight and patted him, finding the loaded magazine and then the packet of heroin.

Applying the standard test of reasonableness to the detention, we conclude the lower court was correct. ■ As stated in *Terry v. Ohio* (1968) 392 U.S. 1, 21-22 [20 L.Ed.2d 889, 906, 88 S.Ct. 1868]: "[W]ould the facts available to the officer at the moment of the seizure or the search 'warrant a man of reasonable caution in the belief' that the action taken was appropriate?" ■ Officer Jones was not acting on a mere hunch. He needed to investigate a report of a possible prowler in a commercial area in which all the businesses were closed. Arriving in the area, the only people he finds are seated in a parked car. He asks for identification which they do not provide; they continue to talk to each other but only in Spanish, which the

officer cannot understand. To do less than inquire further would have been extremely dangerous as well as negligent.

Requesting a driver to step out of a car "after the driver [i]s lawfully detained" is a reasonable and minimal intrusion. (*Pennsylvania* v. *Mimms* (1977) 434 U.S. 106, 109 [54 L.Ed.2d 331, 336, 98 S.Ct. 330].) Once out of the car, Jones patted him for weapons, fearing he might have been a burglar, and also fearing for his own safety because he was alone with two detainees. "The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." (*Terry* v. *Ohio, supra,* 392 U.S. at p. 27 [20 L.Ed.2d at p. 909].) Under these circumstances, a reasonably prudent person would fear a possible burglar and burglary suspects frequently carry weapons. (*People* v. *Myles* (1975) 50 Cal.App.3d 423, 430 [123 Cal.Rptr. 348]; *U.S.* v. *Walker* (1st Cir. 1991) 924 F.2d 1, 4.) The minimal intrusion of a patdown under these circumstances is a reasonable response to the potential danger if these "necessary measures [are not taken] to determine whether the person is in fact carrying a weapon and to neutralize the threat of physical harm." (*Terry* v. *Ohio, supra,* 392 U.S. at p. 24 [20 L.Ed.2d at p. 908].) And once the magazine was found, the fear of further weapons and ammunition was increased; opening the container under Castaneda's belt was likewise warranted. (*People* v. *Franklin* (1985) 171 Cal.App.3d 627, 636 [217 Cal.Rptr. 529].)

Castaneda's complaint that his conduct was open to a totally innocent interpretation does not invalidate the officer's opposite interpretation. (*People* v. *Warren* (1984) 152 Cal.App.3d 991, 997 [199 Cal.Rptr. 864].) Language to the contrary found in *Irwin* v. *Superior Court* (1969) 1 Cal.3d 423, 427 [82 Cal.Rptr. 484, 462 P.2d 12] was disapproved in *In re Tony C.* (1978) 21 Cal.3d 888, 894 [148 Cal.Rptr. 366, 582 P.2d 957].

The judgment is affirmed.

Rylaarsdam, J., and Wallin, J., concurred.