[No. A047635. First Dist., Div. Three. Oct. 12, 1990.]

THE PEOPLE, Plaintiff and Respondent, v.
DAVID STOKES, Defendant and Appellant.

**COUNSEL**

Albert Wong, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Richard B. Iglehart, Chief Assistant Attorney General, John H. Sugiyama, Assistant Attorney General, Martin S. Kaye and Sharon G. Birenbaum, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**STRANKMAN, J.**—Appellant David Stokes was convicted by a jury of first degree burglary. (Pen. Code, § 459.)[1] He also admitted two prior serious felony convictions. (§§ 459, 667.) The issue in this appeal is whether the trial court erred denying appellant's section 1538.5 motion to suppress evidence. We conclude that the motion was properly denied, and affirm the judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

a. *The Section 1538.5 Hearing*

The evidence at the section 1538.5 hearing was as follows. At about 2:45 p.m. on April 25, 1989, Hayward Police Officer Robert Coffey and his partner, Officer Fred Rose, were patrolling in an unmarked car in Spanish Ranch One, a Hayward mobilehome park. The park was occupied primarily by retired senior citizens, and was surrounded by an eight-foot stone fence, with one entrance and one exit.

Officer Coffey saw appellant standing in the middle of a street which was about three streets into the complex. Appellant was walking to the intersection. Under his arm he was carrying a rectangular object, about two feet by three feet, which was covered by a purple afghan. When appellant got to the intersection, he looked around and appeared to be anxious. He tightened his grip on the object, and refolded part of the afghan and tucked it under his arm. After about 20 seconds, a gold car pulled up beside appellant and stopped; he put the object into the front seat and got into the car.

Officer Coffey recognized appellant, whom he had once arrested for being under the influence. He also knew that appellant had been previously arrested for burglary. Coffey knew that appellant did not live in the mobilehome park, and knew that there had been a lot of burglaries in the park. Appellant's history, his presence in the middle of the street in the senior citizens' mobilehome park with the wrapped-up object under his arm, and his

---

[1] Unless otherwise indicated, all further statutory references are to the Penal Code.

behavior before and after the car arrived, all led Coffey to suspect that the object was from a burglary.

As Coffey and his partner drove past the gold car, appellant and its driver, a woman later identified as Dannette Torres, both looked at the officers. The officers made a U-turn a block away and pulled in behind the gold car, which drove off at about five to ten miles per hour. After the car traveled about 50 feet, it suddenly made a left turn into a parking lot. The officers parked beside the gold car and got out of their car. As Coffey approached the gold car, Torres dropped a coin purse on the ground. Coffey picked it up. He felt two hard, cylindrical objects which he thought were hypodermic needles, and an object which was flat at one end and curved at the other, which he suspected was a spoon. When Coffey picked up the purse, Torres turned to appellant and said, "I told you not to do it." Coffey opened the purse, found a "hype kit," and arrested Torres for its possession.

Appellant was still in the front passenger seat, talking with Officer Rose. Coffey noticed that appellant seemed relaxed; his eyelids looked heavy, his speech was somewhat slow, and his pupils seemed constricted. Coffey believed that appellant was under the influence of an opiate, and asked him to get out of the car. Coffey noticed a screwdriver in appellant's right rear pants pocket and took it from him; the officer was aware that screwdrivers are used as instruments of burglary. Coffey arrested appellant for being under the influence.

The passenger door of the car was open. In the middle of the front seat Coffey saw the afghan partially covering the object, which was a video-cassette recorder (VCR). Coffey asked Torres and appellant if he could search the car; they both consented to the search. Coffey then seized the VCR and the afghan. He did not ask them if the VCR was theirs, but neither claimed it.

b. *The Trial*

Because the only issue in the appeal arises out of the suppression hearing, we need not set forth the trial evidence in any detail. Suffice it to say that Officer Coffey's trial testimony about appellant and the VCR was similar to his testimony at the suppression hearing. James Patterson, who lived in the Spanish Ranch mobilehome park with his mother, testified that when he left home at about 10 a.m. on the morning of April 25 his mother had already left. When he returned at about 3 or 4 p.m., the back window was open and his VCR was missing. In addition, his mother's purple afghan was gone.

## DISCUSSION

a. *The Trial Court's Ruling*

Both appellant and codefendant Torres moved to suppress evidence of the VCR; Torres also sought suppression of the coin purse. The court denied the motion, reasoning in part that the officer had probable cause to believe that the VCR was stolen. The court also stated that appellant had no reasonable expectation of privacy as to the VCR and no standing to challenge its admissibility.

b. *Probable Cause to Seize the VCR*

■ Appellant does not question the officers' right to search the car; instead, he challenges the seizure of the VCR. He argues that although the officer may have been suspicious about the VCR, he did not have probable cause to believe that it was stolen. He notes that the officer did not know that a burglary had occurred and that the VCR had no distinctive marks suggesting it was stolen.

■ The warrantless seizure of an item that comes within plain view of the police during their lawful search of a private area may be constitutionally permissible, provided certain conditions are satisfied. (*Horton* v. *California* (1990) 495 U.S. 495, ___ [110 L.Ed.2d 112, 120-126, 110 S.Ct. 2301, 2306-2310].) Among the conditions required to invoke this plain view doctrine, the police must have probable cause to believe that the item in question is evidence of a crime or contraband. (*Arizona* v. *Hicks* (1987) 480 U.S. 321, 323, 326 [94 L.Ed.2d 347, 352-353, 107 S.Ct. 1149].) The probable cause rule articulated in *Hicks* has been described as a specific application of the requirement declared in *Warden* v. *Hayden* (1967) 387 U.S. 294, 307 [18 L.Ed.2d 782, 792, 87 S.Ct. 1642], that before property may be seized without a warrant, there must be a "nexus" between the item to be seized and criminal behavior. (*People* v. *Rios* (1988) 205 Cal.App.3d 833, 839 [252 Cal.Rptr. 653].)

In the context of the plain view doctrine, probable cause is a flexible, commonsense standard, which requires only that the facts available to the officer would warrant a person of reasonable caution in believing that the item may be contraband or stolen property or evidence of a crime. No showing is required that such a belief is correct or more likely true than false. "A 'practical, nontechnical' probability that incriminating evidence is involved is all that is required. [Citation.]" (*Texas* v. *Brown* (1983) 460 U.S. 730, 742 [75 L.Ed.2d 502, 514, 103 S.Ct. 1535] (plur. opn.); see *id.*, at p. 744 [75 L.Ed.2d at p. 514] (conc. opn. by White, J.) The determination whether

there is probable cause to believe property in plain view has been stolen depends on the totality of the circumstances known to the officer which reasonably bear on the question; the officer's determination is not limited to an examination of the property itself. (*People* v. *Rios, supra,* 205 Cal.App.3d at pp. 840-841; *People* v. *Miller* (1976) 60 Cal.App.3d 849, 853-854 [131 Cal.Rptr. 863].)

*In re Curtis T.* (1989) 214 Cal.App.3d 1391 [263 Cal.Rptr. 296] illustrates that specific knowledge that a theft-related crime has been committed is not a prerequisite to the existence of probable cause to believe property has been stolen. In that case, a minor accused of cocaine possession was placed on home supervision. Probation officers went to his home to pick him up after he violated the supervision agreement by leaving home on one occasion. One of the probation officers entered the minor's bedroom and noticed some car stereo equipment piled on the floor; he thought it was unusual to have so much equipment in one place. He also noticed that the wires on one radio had been cut all to the same length. The officer's past experience and the manner in which the wires had been cut led him to believe that the stereo had been stolen from a car. He picked up the stereo to run a computer check on the serial number, and discovered that its serial number had been obliterated. (*Id.*, at p. 1394.) The appellate court rejected the minor's argument that the officer had only a suspicion that the property was stolen, and held that he had probable cause to search the stereo for its serial numbers.[2] (*Id.*, at p. 1398.) There was no evidence that the officer was aware of a particular car burglary.

Principles applicable to assessing the existence of probable cause to arrest are also instructive here. One treatise writer has explained, "[I]t is not essential to a finding of probable cause that the officer be able to relate the person or property to some particular prior crime. An arrest for burglary and a search of a vehicle for the fruits thereof, for example, is not rendered illegal by 'the mere fact that, at the time the search and seizure occurred, the officer was unaware of any specific burglary.' " (2 LaFave, Search and Seizure (2d ed. 1987) § 3.6(a), p. 32, fns. omitted.) The nature of the property, the manner and circumstances of its possession, efforts by the defendant to conceal the property from police view, flight upon approach of the police, or other facts may combine to establish probable cause to arrest even if the

---

[2] Picking up the stereo to check its serial numbers constituted a search requiring justification by probable cause. "[T]aking action, unrelated to the objectives of the authorized intrusion, which exposed to view concealed portions of the apartment or its contents, did produce a new invasion of . . . privacy unjustified by the . . . circumstance that validated the entry. . . . It matters not that the search uncovered nothing of any great personal value . . . [such as] serial numbers . . . . A search is a search, even if it happens to disclose nothing but the bottom of a turntable." (*Arizona* v. *Hicks, supra,* 480 U.S. at pp. 324-325 [94 L.Ed.2d at p. 354].)

police officer is unaware of any specific crime having been committed. (*Id.*, at pp. 32-34 and cases there cited; see, e.g., *People* v. *Martin* (1973) 9 Cal.3d 687, 691-692 [108 Cal.Rptr. 809, 511 P.2d 1161] [officer's knowledge of defendant's prior arrests for receiving stolen property and officer's observations of defendant's highly suspicious conduct, including presence of number of business machines in rear of station wagon parked by defendant and transfer of one of those machines to another vehicle, constituted probable cause to believe crime had been committed or was in progress].)

 In this case, then, what is significant is the totality of the circumstances known to Officer Coffey, not any single fact. Coffey saw appellant standing in the street in a mobilehome park occupied primarily by senior citizens. He knew that appellant did not live in the park, and knew appellant had been arrested for burglary previously. The officer also knew that several burglaries had been committed in the neighborhood. Appellant was carrying a rectangular object wrapped in an afghan; he seemed anxious. Obviously, one reasonable inference from his behavior is that he was trying to conceal the object. Then, when the officers approached the car in which appellant put the object, Torres looked at appellant and said, "I told you not to do it." When appellant got out of the car, he had a screwdriver in his back pocket, and the officer knew that screwdrivers are used as burglary tools. When Coffey looked into the car, he saw that the object which appellant had apparently been trying to hide was a VCR.

All these facts, considered together, would undoubtedly justify an officer of reasonable caution in believing that the VCR had been stolen, and permit its seizure. Given the totality of the circumstances, it was insignificant that Coffey was unaware of the Patterson burglary or that the VCR itself had no distinctive marks suggesting it was stolen.

The cases relied on by appellant are of no assistance to him. In *People* v. *Murray* (1978) 77 Cal.App.3d 305 [143 Cal.Rptr. 502], officers with a warrant went to the premises of a person suspected of fencing stolen property. They found none of the items described in the warrant, but seized 67 television sets, including 20 from which the serial numbers had been removed. The appellate court concluded that the plain view doctrine did not justify seizure of the sets with intact serial numbers. The court explained, "Notwithstanding a generalized suspicion that the television sets and other items had been stolen, and aside from the 20 television sets from which the serial numbers had been removed, *the testimony at the preliminary hearing did not establish that the officers in fact knew which items were contraband* and which items legitimately belonged to the appellant." (*Id.*, at pp. 311-312, fn. omitted, italics added.)

First, we have serious doubts about the soundness of the *Murray* court's analysis, which is inconsistent with the principle that probable cause is a commonsense standard, requiring only a practical, nontechnical probability that property has been stolen. An officer need not know that items are stolen to have probable cause. (*Texas* v. *Brown, supra*, 460 U.S. at p. 742 [75 L.Ed.2d at pp. 513-514] (plur. opn.); see *id.*, at p. 744 [75 L.Ed.2d at p. 515] (conc. opn. by White, J.).) In any event, *Murray* is factually distinguishable from the present case. *Murray* involved a search of premises based on a warrant which did not mention the items ultimately seized. The officers had no information about the defendant's conduct in relation to those items which gave reason to believe that they were stolen, and the items themselves had no distinctive markings to indicate that they were stolen. Here, in contrast, the totality of the facts known to the officer did lead reasonably to the belief that the VCR which he saw in plain view had been stolen.

*Nunes* v. *Superior Court* (1980) 100 Cal.App.3d 915 [161 Cal.Rptr. 351] is also inapposite. In that case the officers seized property based on their "general suspicion" that the property coincided with descriptions contained in police reports not in their possession. (*Id.*, at p. 932.) Nothing similar occurred here.

Finally, our conclusion that the seizure of the VCR was justified by probable cause makes it unnecessary to consider appellant's contention that the trial court erred when it concluded he did not have standing to seek suppression of that piece of equipment.

### DISPOSITION

The judgment is affirmed.

White, P. J., and Merrill, J., concurred.